***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. U.S. Liability Insurance Group C/O GABCS is the carrier on risk.
4. Plaintiff's average weekly wage was $1,000.00.
5. Plaintiff's medical records were stipulated into evidence as a portion of Stipulated Exhibit 1.
6. Industrial Commission forms and filings relating to this case were stipulated into evidence as a portion of Stipulated Exhibit 1.
7. Discovery responses relating to this case were stipulated into evidence as a portion of Stipulated Exhibit 1.
8. The issues before the Full Commission are: (i) whether plaintiff sustained a compensable injury by accident on March 16, 2001; and (ii) if so, what compensation, if any, is due plaintiff?
9. The depositions of Jeffrey L. Gross, M.D., Valentine Hamilton, M.D., and Ralph Quade, M.D. are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing of this matter, plaintiff was thirty-seven (37) years old. Plaintiff has a high school diploma and extensive job experience with food preparation and restaurant management.
2. Plaintiff was employed by defendant-employer as general manager of the International House of Pancakes restaurant (IHOP) in Jacksonville, North Carolina. Plaintiff began this employment in September 1999. Plaintiff was responsible for the daily operations of the restaurant which included supervising staff, ordering inventory, cooking, keeping books, unloading supply trucks, and generally filling all aspects of necessary restaurant operations. Plaintiff's job required him to stand, walk, bend, stoop and lift for the majority of the workday.
3. On March 16, 2001, plaintiff was repairing a wooden shelf in the restaurant office when the shelf fell from the wall and the shelf and items fell on plaintiff's foot. Plaintiff bent over rapidly and fell backwards as a result of this incident. Plaintiff immediately felt pain in his foot and ankle.
4. Initially, plaintiff sought treatment from Dr. Valentine Hamilton, a podiatrist, who took x-rays and ordered plaintiff out of work for three (3) days. Dr. Hamilton diagnosed plaintiff with trauma to the left foot with possible stress fracture and treated him with a walking boot which functions as a cast.
5. Plaintiff returned to work on March 20, 2001, placed himself on light duty, and accommodated any restrictions present due to wearing the walking boot by obtaining assistance from other employees.
6. Plaintiff reported the accident to the insurance carrier on March 20, 2001 and verbally, over the phone, completed an Industrial Commission Form 19, Employer's Report of Injury to Employee. Plaintiff made no report of any back injury or back pain on the Form 19.
7. Plaintiff claimed that in March or April 2001, he contacted Dr. Hamilton to report that he was having back pain. Dr. Hamilton denied having any such conversation with plaintiff and stated any such conversation would have been documented in plaintiff's medical records. Dr. Hamilton's testimony is given greater weight and the Full Commission finds that plaintiff did not report back pain to Dr. Hamilton in March or April 2001.
8. Plaintiff's last day of employment with defendant-employer was March 27, 2001 at which time he voluntarily resigned.
9. Plaintiff was scheduled to return to Dr. Hamilton on March 29, 2001, but failed to attend the appointment.
10. During the second week of April 2001, plaintiff returned to defendant-employer to pick up his last paycheck. The new manager, Jose Cortes, saw plaintiff at this time and testified that plaintiff was not wearing a walking boot, exhibited no signs of pain, and made no mention of any physical difficulties.
11. Plaintiff remained in a walking boot cast and returned to Dr. Hamilton on May 3, 2001. Plaintiff made no mention of back pain during this visit and only complained of mild numbness over the top of the dorsal lateral aspect of his left foot and calf; however, this was not the same area of plaintiff's left foot that he had originally reported symptomatic. Even though plaintiff's subjective complaints did not correlate with objective findings, Dr. Hamilton gave plaintiff the benefit of the doubt and ordered EMG studies of plaintiff's left foot to check for neurological damage. Although Dr. Hamilton took plaintiff out of work until such time as the EMG was performed, she did so expecting the studies would be completed within one week. Dr. Valentine did not anticipate that plaintiff would be out of work after the studies were done; however, the EMG studies were never completed.
10. Plaintiff was referred to Jeffrey L. Gross, M.D., an orthopedic surgeon, by defendant-carrier. Plaintiff's first mention of back pain to any medical provider after his March 16, 2001 accident occurred on June 11, 2001 when he was seen by Dr. Gross who also treated plaintiff's previous foot injury in 2000. Based on the history provided by plaintiff, Dr. Gross was under the impression that plaintiff had experienced back pain since shortly after the March 16, 2001 accident. Dr. Gross ordered an MRI which was performed on August 9, 2001 and showed a bulging disc at L4-5. Thereafter, plaintiff relocated to New York and Dr. Gross rendered no additional treatment. Dr. Gross wrote plaintiff out of work for four weeks beginning June 11, 2001; however, he testified that plaintiff could have performed work during this time with the restrictions of no lifting over ten pounds, limited bending and limited standing.
12. After relocating to New York, plaintiff received no additional medical treatment until October 22, 2001. Plaintiff also made no attempts to seek employment between June 11, 2001 and October 22, 2001.
13. On October 22, 2001, Dr. Ralph Quade, a New York orthopedist, treated plaintiff and diagnosed him with back strain. Plaintiff completed a course of physical therapy and although his physical examinations were completely normal, Dr. Quade referred plaintiff to a neurologist.
14. Dr. Hani Midani, neurologist, examined plaintiff on January 2, 2002 and noted that plaintiff's symptoms were suggestive of radiculopathy despite the fact that there were no objective deficits. Dr. Midani recommended left foot EMG studies to confirm this diagnosis.
15. Plaintiff returned to Dr. Quade on February 8, 2002 and he agreed with Dr Midani's recommendation. Dr. Quade was of the opinion that plaintiff was not a surgical candidate. Plaintiff's testimony that Dr. Quade discussed fusion surgery with him is not accepted as credible.
16. Plaintiff did not undergo EMG studies or return for any additional treatment with Dr. Quade. Plaintiff's testimony that Dr. Quade would not treat him without payment was contradicted by the physician and is not accepted as credible. Although Dr. Quade wrote plaintiff out of work from his normal job as general manager of a restaurant on February 8, 2002, Dr. Quade stated that if plaintiff was not receiving ongoing medical treatment, he would assume that plaintiff could work.
17. Dr. Quade stated that plaintiff was fully capable of performing a job that did not require lifting or physical labor during the course of his medical treatment; however, plaintiff made no efforts to find employment throughout the time period of his treatment with Dr. Quade.
18. At the deputy commissioner hearing of this matter, plaintiff contended that his back pain began on March 16, 2001. Plaintiff's testimony, contradicted by both medical records and multiple witnesses' testimony, is not credible and convincing, and is therefore rejected. Both Dr. Quade and Dr. Gross opined that if plaintiff's back pain complaints did not begin within weeks after the accident, plaintiff's back condition could not be related to the traumatic event. The Full Commission accepts the physicians' testimony as credible and finds that plaintiff's back pain was not caused or aggravated by the March 16, 2001 accident.
19. As of the date of the deputy commissioner hearing in this matter, plaintiff had made no attempts to find employment since March 27, 2001, his last day of work with defendant-employer. Plaintiff testified that he felt unable to work during this time.
20. Plaintiff was offered several jobs as a general manger following his March 16, 2001 accident; however, plaintiff refused to attempt the work. As general manager, plaintiff had the authority to modify his work duties to accommodate the work restrictions imposed by his treating physicians. Plaintiff failed to engage in a job search, unjustifiably refused to attempt work, and unjustifiably refused to accept managerial positions offered to him within his physical restrictions.
21. Plaintiff suffered no temporary total, temporary partial, or permanent partial disability as a result of his left foot injury sustained in the March 16, 2001 accident. No additional medical treatment is necessary for plaintiff's left foot injury.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On March 16, 2001, plaintiff sustained a compensable injury by accident to his left foot arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. As result of his compensable injury by accident on March 16, 2001, plaintiff sustained no compensable temporary total disability, temporary partial disability, or permanent partial disability related to his left foot injury. N.C.G.S. §§ 97-29, 97-30, and 97-31.
3. Plaintiff is entitled to no further medical treatment for the March 16, 2001 compensable injury by accident to his left foot. N.C.G.S. §97-25.
4. Plaintiff has the burden of proving he sustained a compensable injury to his back arising out of and in the course and scope of his employment. N.C.G.S. § 97-2(6). As part of this burden, plaintiff must present credible, convincing evidence and the Industrial Commission has the authority to the review witness testimony and accept or reject such testimony in whole or in part. Gaddy v. Kern, 17 N.C. App. 680,682, 195 S.E.2d 141, 143, cert denied 283 N.C. 585, 197 S.E.2d 873
(1973). Plaintiff's testimony as a whole is specifically rejected on the grounds that plaintiff lacks credibility. Plaintiff has furthermore failed to present credible, competent evidence that he sustained a compensable injury to his back on March 16, 2001 and has failed to prove that the March 16, 2001 accident caused or aggravated any back condition. As plaintiff has failed to satisfy his burden of proof, his claim for benefits related to his back must be denied.
3. Plaintiff has the burden of proving a causal relationship between his back injury and the March 16, 2001 accident and evidence presented regarding causation must rise above the level of speculation. Phillipsv. U.S. Air, Inc., 120 N.C. App. 538, 463 S.E.2d 259 (1995), aff'd,343 N.C. 302, 469 S.E.2d 552 (1996). Plaintiff has failed to present competent, credible medical evidence that his back injury was caused or aggravated by the March 16, 2001 accident. Plaintiff's claim for benefits must therefore be denied.
4. Plaintiff has the burden of establishing disability and the extent of disability due to any alleged back injury. Kennedy v. Duke UniversityMedical Center, 100 N.C. App. 24, 398 S.E.2d 677 (1990). To satisfy this burden, plaintiff must show he is incapable after his injury of earning the same wages in the same employment, that he is incapable after injury of earning the same wages in any other employment and that his incapacity to earn wages was caused by the injury. Plaintiff has failed to present competent, credible evidence that he has been disabled since his last day of employment on March 17, 2001, or that he has sustained any permanent partial impairment to his back; thus, plaintiff's claim for disability benefits related to his back must be denied.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim must be and is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of April 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER